**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

JEREMIAH HOLLAND, ADC #101324,     \*
     \*
     Petitioner,     \*
v.     \*
     \*     No. 5:12CV00463-SWW-JJV
RAY HOBBS, Director,     \*
Arkansas Department of Correction     \*
     \*
     Respondent.     \*

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Susan Webber Wright.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in a waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a new hearing for this purpose before either the District Judge or Magistrate Judge, you must, at the time you file your written objections, include the following:

1.     Why the record made before the Magistrate Judge is inadequate.

2.     Why the evidence to be proffered at the new hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.  Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

## I.      BACKGROUND

In 1993, a jury in Searcy County, Arkansas, convicted the Petitioner, Jeremiah Holland, of first-degree murder and he was sentenced to life in prison.  (Doc. No. 9-1.)  Mr. Holland was sixteen years old when he killed his ten-year-old cousin, Sheera Fruitt.  (Doc. No. 9.)  The Arkansas Supreme Court recited the evidence supporting his conviction as follows:

> Late in the evening of July 16, 1991, or in the early hours of July 17, 1991, ten-year-old Sheera Fruitt was killed by blunt force trauma to the head and strangulation.  The State's medical examiner testified that Sheera was strangled by use of a ligature, and that she was struck at least twice on the head prior to her death. The autopsy revealed bleeding in her eyes and lips. It also revealed extensive bleeding in her lungs and voice box that the medical examiner opined was evidence that Sheera was strangled for three minutes or more before she died. At the time of Sheera's death, Holland lived with Sheera and her mother Elaine Whitney. Elaine is Holland's aunt. On July 16, 1991, Elaine left for work about 8:30 p.m.  Upon her return early the next morning, she found a note on her door telling her to go to her landlord's home. There she found Holland who alleged that Sheera had run away.  Law enforcement were called and a search for Sheera lasted throughout the day. . . . About 7 p.m., Sheera's body was removed from the pond. . . .
>
> That night, Holland was taken into custody and questioned again.  He again denied any knowledge of what had happened to Sheera.  The next morning, [State Police Agent] Kesterson arrived to question Holland.  Holland recounted the following story to Kesterson.  After Elaine left for work, he and Sheera got into an argument

about several things including whether Sheera could go to a friend's house. He tried to sleep that night, but he could not because Sheera would not stay in bed. In the early hours of the morning, Sheera was jumping on her bed, and Holland tried to get her to go back to sleep. She jumped off the bed and knocked him down so that he fell into the bathroom floor. She began to hit and kick him, and he got a curling iron and acted as if he were about to hit her. He denied hitting her with the curling iron, but stated that he put the cord around her neck and "pulled on it." Sheera stopped hitting and kicking him, and "grabbed her throat." She moved her hand some, and then stopped moving. He denied any intent to kill Sheera.

After sitting for a while and trying to decide what to do, he removed her clothing because he had decided to put her body in the pond and didn't want pieces of rotted clothing to "float up." He then carried the body to the pond struggling over fences and obstacles. He threw Sheera's body in the water but found it did not sink. He removed her shoes and socks, retrieved the body, and then used a piece of clothesline to tie one rock to her chest and one to her legs. He then walked out into the pond until his head was just under water and dropped the body. He went back to the trailer home and removed his clothes, placing them in the bottom of a hamper where they were found by law enforcement. . . . Holland was charged with the violation of Ark. Code. Ann. § 5-10-102 (Supp. 1991) in that with the "premeditated and deliberated purpose of causing the death of another person, he caused the death of . . . Sheera Fruitt."

*Holland v. State,* 364 Ark. 55, 56-58, 225 S.W.3d 353, 354-355 (2006).

Mr. Holland initially sought to have his case transferred to juvenile court pursuant to Arkansas Code Annotated § 9-27-318(e) (Repl. 1991). After the trial court denied the motion to transfer, Mr. Holland appealed that decision to the Arkansas Supreme Court, which affirmed. *Holland v. State,* 311 Ark. 494, 844 S.W. 2d 943 (1993).

After his conviction, Mr. Holland again appealed to the Arkansas Supreme Court. He raised two claims: (1) that the state court erred in admitting his confession because it was obtained in the absence of a knowing and intelligent waiver, and in violation of the juvenile code; and (2) that the circuit court erred in allowing the State to recall a witness. *Holland v. State,* 365 Ark. 55, 225 S.W.3d 353 (2006). (Doc. No. 9-3.) The Arkansas Supreme Court found no error and affirmed. *Id.* Because Mr. Holland received a life sentence, the Court also reviewed the record pursuant to

Arkansas Supreme Court Rule 4-3(h), and found no prejudicial error.  *Id.*

Mr. Holland filed the instant Petition on December 28, 2012, alleging that his sentence of life imprisonment without parole for a crime committed when he was a juvenile is excessive, in violation of the Eighth Amendment ban of "cruel and unusual" punishment as decided in *Miller v. Alabama,* 132 S. Ct. 2455 (2012).  (Doc. No. 2.)

## II.    ANALYSIS

Respondent argues that Mr. Holland's Petition is barred by the statute of limitations.  (Doc. No. 6 at 4.)  Title 28 U.S.C. §§ 2241 (d)(1) and (d)(2) impose a one-year period of limitation on petitions for writ of habeas corpus:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of --
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1)-(d)(2).

After carefully reviewing the record, the Court finds the Petition is untimely.  The one-year

limitations period began to run on the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). The Arkansas Supreme Court affirmed Holland's conviction on January 26, 2006. (Doc. No. 9-4.) Mr. Holland did not seek a writ of certiorari from the Supreme Court of the United States; however, allowing him ninety days for seeking such review, his conviction became final on April 27, 2006. The one year statute of limitations began to run on that date, and as such Mr. Holland had until April 27, 2007, to file his federal habeas petition. The instant Petition filed on December 28, 2012, was over five and a half years late.

Mr. Holland argues that 28 U.S.C. § 2244(d)(1)(D) is applicable in his case, and that his claims are timely in that "the factual predicate of the claims could not have been discovered prior to June 25, 2012, when the [U]nited States Supreme Court decided *Miller v. Alabama,* 567 U.S. __, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012)." (Doc. 2 at 4.) The Respondent contends that the Supreme Court's decision in *Miller* does not constitute a "factual predicate," undiscovered until the issuance of the Court's opinion. The factual predicate of Mr. Holland's claim is that he was a juvenile when he committed the crime and he was sentenced to a term of life imprisonment upon conviction – facts which necessarily would have been known to him long before his conviction was final on direct review and before the decision in *Miller.* The Court agrees.

Title 28 U.S.C. § 2244(d)(1)(C) provides that the announcement of certain new rules of constitutional law may warrant a delay in the commencement of the limitations period beyond the conclusion of direct review or the expiration of the time for seeking it. Under this provision, the commencement of the limitations period will be triggered on "the date on which the constitutional right asserted was initially recognized by the Supreme Court of the United States, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on

collateral review." 28 U.S.C. § 2244(d)(1)(C).  The Respondent argues that 28 U.S.C. § 2244(d)(1)(C) is not applicable because Mr. Holland's sentence for first-degree murder was not mandatory, but was chosen from a range of sentencing options.  (Doc. No. 9.)  The constitutional right asserted by Mr. Holland has not been recognized by the Supreme Court of the United States.  *Id.*   So this argument is without merit.

Mr. Holland further alleges that *Miller v. Alabama,* 132 S. Ct. 2455 (2012), is applicable to his case.  (Doc. No. 2 at 5.)  In *Miller,* the Supreme Court held that the "Eighth Amendment forbids a sentencing scheme that *mandates* life in prison without possibility of parole for juvenile offenders." *Miller,* 132 S. Ct. at 2469 (emphasis added).   *Miller*'s holding expressly applies only to schemes that impose mandatory life-without-parole sentences for juvenile murderers because such schemes, by removing any other sentencing options, "make youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence," and thereby "pose[ ] too great a risk of disproportionate punishment." *Id.*

Such is not the case here. Mr. Holland was convicted of first-degree murder, pursuant to Arkansas Code Annotated § 5-10-102, which is classified as a "Y" felony.  "Y" felonies in Arkansas carry a sentencing range of "not less than ten years and not more than forty years, or life." Ark. Code Ann. § 5-4-401.  Mr. Holland was not sentenced to life without parole by a mechanism that altogether  precluded consideration of a lesser sentence for any reason, including youth, and therefore the *Miller* decision does not apply to Mr. Holland's case. (Doc. No. 9.)

In his Writ of Habeas Corpus Petition, Mr. Holland attempts to expand the *Miller* holding – creating a new constitutional rule that would mandate, regardless of the availability of other sentencing options, a judge or jury may never sentence a juvenile murderer to life without parole unless it first considers the defendant's youth as mitigation.  (Doc. No. 2 at 15.)   However, this

would violate the non-retroactivity principle in *Teague v. Lane,* 489 U.S. 288 (1989).  A prisoner, through a collateral proceeding, may only obtain the benefit of a new rule, or the creation of a new rule in his or her case, if that rule falls within one of the two exceptions to the general principle that new rules will not be applied on collateral review.  *Id.*  Mr. Holland's new rule also does not lie within one of the two *Teague* exceptions. It is not substantive.  "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes.  In contrast, rules that regulate only the manner of determining the [petitioner's] culpability are procedural." *Schriro v. Summerlin,* 542 U.S. 348, 353 (2004).  Mr. Holland is not seeking a categorical ban on juvenile sentences of life without parole; instead, he argues to change the manner in which life-without-parole sentences are handed down.  This is not substantive, and therefore his proposed rule does not fit within the first *Teague* exception.

The second *Teague* exception is that the rule must be a watershed rule.

In order to qualify as a watershed rule, a new rule must meet two requirements: First, the rule must be necessary to prevent an impermissibly large risk of an inaccurate conviction. Second, the rule must alter our understanding of the bedrock procedural elements essential to the fairness of the proceeding.

*Whorton v. Bockting,* 549 U.S. 406, 418 (2007) (internal quotations and citations omitted).

To date, the Supreme Court of the United States has only identified one case as qualifying under the watershed exception. That case was *Gideon v. Wainwright,* 372 U.S. 335 (1963) which established that counsel must be appointed for any indigent defendant charged with a felony and therefore, was retroactive under the watershed exception.   Mr. Holland's proposed rule is not a watershed rule because it meets neither of the two requirements. It is not necessary to prevent an impermissibly large risk of an inaccurate conviction nor does it alter our understanding of the bedrock procedural elements essential to the fairness of the proceeding, as was the case in *Gideon.*

Because Mr. Holland's proposed new constitutional rule does not fit within either of the *Teague* non-retroactivity exceptions, he cannot succeed in establishing it in this collateral proceeding.

Further, Mr. Holland's argument that *Coleman v. Thompson,* 501 U.S. 722 (1991) excuses him from his failure to present his claims in state court (Doc. 2 at 5) is not relevant here. The Respondent does not assert the affirmative defense of procedural default under the adequate and independent state ground doctrine because the right that Mr. Holland asserts has not been recognized. (Doc. No. 9 at 7.) Therefore, it most likely would be deemed to have been novel at the time of his trial and direct appeal. As such, *Coleman* is of no relevancy in the instant habeas petition.

## III.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the <u>Rules Governing Section 2254 Cases in the United States District Courts</u>, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  In cases where the petitioner's claims are procedurally barred, a district court must consider the following factors when determining whether it should issue  a certificate of appealability:  "(1) if the claim is clearly procedurally defaulted, the certificate should not be issued; (2) even if the procedural default is not clear, if there is no merit to the substantive constitutional claims, the certificate should not be issued; but, (3) if the procedural default is not clear and the substantive constitutional claims are debatable among jurists of reason, the certificate should be granted."  *Khaimov v. Crist*, 297 F.3d 783, 786 (8th Cir. 2002) (citing *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000)); *see also Langley v. Norris*, 465 F.3d 861, 863 (8th Cir. 2006).

In this case, the Petition is clearly time barred and the Petitioner's claims are without merit. Therefore, no certificate of appealability should be issued.

## IV.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.    The Petition for Writ of Habeas Corpus (Doc. No. 2) be DISMISSED with prejudice.

2.    A certificate of appealability should not be issued.

DATED this 1st day of November, 2013.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE